## Fuller Company v. Valley Consolidated Industries, Inc.

*Mark F. Brancato,* for plaintiff.
*W. F. Brodt,* for defendant.

DAVISON, *J.,* May 31, 1984 — We have before us the preliminary objections of defendant, Valley Consolidated Industries, Inc. (Valley) alleging that insufficient contacts exist between it and Pennsylvania for this court to exercise personal jurisdiction.[1] For the reasons set forth herein, we dismiss the objections.

The relevant facts are as follows: On or about October 19, 1979, Valley, an Ohio corporation authorized to do business in Pennsylvania since 1975, submitted to plaintiff, Fuller Company (Fuller), a Delaware corporation with offices in Bethlehem, Pa., a proposal to provide support steel for the construction of a fume emission control baghouse in Canton, Ohio. Thereafter, following negotiations conducted by mail and telephone, on November 7, 1979, the parties entered into an agreement in

---

1. Defendant also raised the issue of improper venue and demurred to the complaint; these issues, however, were neither briefed nor argued.

Catasauqua, Lehigh County, Pa., for the fabrication and delivery of the steel.

The contract provides that "this agreement shall be considered to have been entered into in Catasauqua, Pa. under the laws of the State of Pennsylvania." The agreement also contains an extensive mechanism to review Valley's proposed plans, calling for Valley to send its proposed plans to Fuller in Pennsylvania "prior to commencement of the fabrication" and Fuller to "return approval drawings with disposition 1 to 2 weeks after receipt." Valley was then required to "promptly follow up approval drawings submitted with submittal of a certified sepia (reproducible print) for each drawing." All construction took place in Ohio. Fuller alleges, however, and Valley has not disputed, that "design work and fabrication of thimbles and tube sheets pursuant to the contract were performed in Pennsylvania and forwarded to Defendant," and that "Defendant's work was monitored and and administered in Pennsylvania by Plaintiff's Bethlehem, Pa. office."[2]

The contract required Valley to prepare and paint the steel according to Fuller's instructions in order to prevent the formation of rust. Fuller contends that Valley failed to follow these specifications, that rust developed as a result, and brought suit in this court to recover damages for the costs of repair.

Fuller contends that personal jurisdiction is proper both under Pennsylvania's "long-arm" statute, 42

2. Ordinarily, factual disputes arising within the context of jurisdictional questions should be resolved through the taking of depositions, Laffey v. Lehigh Valley Dairy Cooperative, 257 Pa. Super. 45, 390 A.2d 238 (1978); however, defendant having failed to dispute the factual allegations, this issue is capable of resolution based on the pleadings before us. Manchel v. Weil, 272 Pa. Super. 591, 416 A.2d 1054 (1979).

Pa.C.S. §5322 and 42 Pa.C.S. §5301(a)(2)(i), which establishes when a foreign corporation is considered a person for jurisdictional purposes. We find that jurisdiction is proper under either statute.

42 Pa.C.S. §5301(a)(2)(1) states the following:

"The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

• • •

Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth."

Pursuant to 15 P.S. §2004 (Purdon 1983-84) Supp.), Valley was issued a certificate of authority in 1975, which remains valid to this day. Consequently, and notwithstanding Valley's reasons for securing its certificate of authority, the courts of the Commonwealth have jurisdiction over it in any proceeding — even where the litigation is unrelated to why Valley initially applied for the certificate. Fischman v. Fischman, 470 F. Supp. 980 (E.D., Pa. 1979); Anderson v. United States, 220 F. Supp. 769 (E.D., Pa. 1963).

The statutory grounds in the long-arm statute which are relevant to our discussion are:[3]

---

3. Plaintiff has also sought to invoke section (a)(9) of the long-arm statute, which provides for jurisdiction over a nonresident defendant upon the: Making application to any government unit for any certificate, license, pemit, registration or similar instrument or authorization or exercising any such instrument or authorization.

Although Valley has received a certificate of authority to operate as a foreign corporation, there has been no evidence pre-

(a) General rule. —A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

. . .

(ii) The doing of a single act in the Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

. . .

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

(b) Exercise of full constitutional power over nonresidents—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Common-

sented that the cause of action in the case at bar relates in any way to the reasons Valley applied for the certificate. Such a nexus being required under section (c), we cannot consider whether section (a)(9) is applicable.

wealth allowed under the Constitution of the United States.

(c) Scope of jurisdiction.—When jurisdiction over a person is based solely upon this section, only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him.

Sections (a)(1)(ii) and (a)(4) are both sufficient upon which to predicate the initial establishment of jurisdiction. With regard to the former, Valley's entering into Pennsylvania for the purpose of signing the contract which is the subject of this case, and its apparent willingness to permit Pennsylvania law to govern, constitute a single act in the Commonwealth for pecuniary benefit, Lieb v. American Pacific International, 489 F. Supp. 690, 694 (E.D., Pa. 1980), while the economic harm alleged to have occurred to Fuller as a result of Valley's actions in Ohio constituted harm as that term is defined in section (a)(4). Rosen v. Solomon, 374 F. Supp. 915, 919 (E.D., Pa. 1974), Fuller Company v. Aerofall Mills, Limited, slip op. at 9, 82-C-298 (Leh. Co. February 3, 1984) (Diefenderfer, J.) cf. B.J. McAdams, Inc. v. Boggs, 426 F. Supp. 1091, 1091, 1098-99 (E.D., Pa. 1977). Harm, within the meaning of section (a)(4), includes economic harm. Monroeville Land Company, Inc. v. Sonnenblick-Goldman Corporation of Western Pennsylvania, 247 Pa. Super. 61, 67 n. 5, 371 A.2d 1326, 1329 n. 5 (1977).

Having thus established that the long-arm statute is applicable, we must next determine whether its employment in the given factual setting offends due process and is violative of the Fourteenth Amendment of the U.S. Constitution. Additionally, since

section (b) is, by its very language, designed to be coterminous with the outer reaches of the Fourteenth Amendment, the analysis to determine if sections (a)(1)(ii) and (a)(4) confer jurisdiction will also determine if section (b) confers jurisdiction.

Our courts have developed a two-step test for determining whether the exercise of in personan jurisdiction over a non-resident falls within permissible constitutional bounds. Koenig v. International Brotherhood of Boilermakers, 284 Pa. Super. Ct. 558, 567-68, 426 A.2d 635, 640 (1980). The first step in the test is the oft-cited enumeration in Proctor & Schwartz, Inc. v. Cleveland Lumber Co., 228 Pa. Super. 12, 323 A.2d 11 (1974). The Proctor test requires that:

"First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. Hanson v. Denckla, [357 U.S. 235 (1958)]. Secondly, the cause of action must arise from defendant's activities within the forum state. See Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968); Electric Regulator Corp. v. Sterling Extruder Corp., 280 F. Supp. 550 (D. Conn. 1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. International Shoe Co. v. Washington, [355 U.S. 220 (1945)] see Southern Mach. Co. v. Mohasco Indus., Inc., supra; see also InFlight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir. 1972); Kourkeen v. American BBR, Inc., 313 F.2d 769 (9th Cir. 1963)." Id. at 19, 323 A.2d at 15. If one or more of the three prongs of the Proctor test is not met, the court must then determine if the non-resident defendant's activities in the Commonwealth unrelated to the cause of action were "con-

tinuous and substantial." Bork v. Mills, 458 Pa. 228, 329 A.2d 247 (1974). Insofar as there has been no evidence presented as to defendant's continuous and substantial activities in the Commonwealth, our discussion only concerns whether all three prongs of the Proctor test has been been met.

The first prong of the Proctor test, namely whether the non-resident defendant has purposefully invoked the protections of this Commonwealth, has been met. In determining whether such protections and privileges have been invoked, we must look at the extent to which defendant's contacts with the forum state — not merely plaintiff's unilateral contacts with the Commonwealth — made it foreseeable that the transaction would have consequences in Pennsylvania.[4] Koenig, supra at 560-61, 426 A.2d at 641. As the U.S. Supreme Court put it, defendant's "conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 297 (1980).

Although all of the construction occurred in Ohio, the terms of the contract required Valley to obtain Fuller's approval before proceeding. Indeed, the agreement mandated that Valley send its designs directly into Pennsylvania. Pennsylvania's involvement with this contract was not merely a foreseeable possibility, it was an absolute certainty. Additionally, the fact that the contract was made in Pennsylvania and applied Pennsylvania law, although not determinative, further lends credence to

4. It is for this reason that we do not consider allegations concerning Valley's invoices having been paid by checks drawn on Pennsylvania banks as relevant, Kenny v. Alexson Equipment Company, 495 Pa. 107, 432 A.2d 974 (1981).

the notion that Valley could reasonably expect to find itself litigating in a Pennsylvania court. Proctor, supra at 14-15, 323 A.2d at 13.

Many of the same factors establishing that the first prong of Proctor has been satisfied also demonstrate that the requirements of the second prong have been met. The allegedly deficient construction occurred in the context of Valley's contractual obligations to Fuller, obligations entered into in Pennsylvania, and obligations to which Pennsylvania has an interest, the result of the contractually-mandated requirement that Fuller approve Valley's proposed construction in Pennsylvania.

The third prong of Proctor — whether defendant's acts have a substantial enough connection to this Commonwealth so as to make the exercise of jurisdiction reasonable and permissible — has also been met. As we have already said, the contract required Valley to maintain contacts with Pennsylvania. The allegations of considerable negotiations on Valley's part are undisputed. The contract clearly exists in a commercial setting and was arranged for a pecuniary motive. Monroeville Land, supra at 71-72, 371 A.2d at 1332. Finally, the distances involved are not so great such as to work an excessive hardship on defendant. Id. at 72-73, 371 A.2d at 1332.

For all of these reasons, we are obliged to dismiss defendant's preliminary objections.

## ORDER

Now, May 31, 1984, after argument, upon consideration of the briefs of counsel, and for the reasons set forth in the accompanying opinion, it is ordered defendant's preliminary objections to the complaint be and the same are hereby denied and dismissed; defendant to file an answer on the merits, if it desires to do so, within 20 days.